UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARWIN DAVELL PAGE,

      Plaintiff,                      Case No. 4:22-cv-11571
                                      District Judge F. Kay Behm
v.                              Magistrate Judge Kimberly G. Altman

EBONY NENROD, WELLPATH, LLC,
KIM FARRIS, JULIANA MARTINO,
KRISTOPHER STEECE, and UNKNOWN
QUARTERMASTER SUPERVISOR,[1]

      Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT (ECF Nos. 15, 19)[2]

### I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Darwin Davell Page (Page), proceeding *pro se*, is suing defendants Ebony Nenrod (Nenrod), Kristopher Steece (Steece), and an unknown Quartermaster Supervisor (collectively MDOC defendants), who are all employed by the Michigan

---

[1] Defendants' full names are spelled as reflected in their motion.

[2] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

Department of Corrections (MDOC), for interference with his due process rights and deliberate indifference to his serious medical needs.  (ECF No. 1).  Page is also suing Kim Farris (Farris), Juliana Martino (Martino), and Wellpath, LLC (Wellpath) (collectively Wellpath defendants) for deliberate indifference.  (*Id.*).  All of the events occurred while Page was incarcerated at the Macomb Correctional Facility (MRF) in Lenox, Michigan.[3]  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 10).

Before the Court are Wellpath defendants' motion to dismiss or alternatively for summary judgment, (ECF No. 15), and MDOC defendants' motion to dismiss or alternatively for summary judgment, (ECF No. 19).  In both motions, defendants argue that Page has not exhausted his administrative remedies against them and has failed to state valid claims for relief.  Page has filed a response collectively to both motions, (ECF No. 24), and MDOC defendants have filed a reply, (ECF No. 25).

For the reasons that follow, the undersigned RECOMMENDS that defendants' motions be GRANTED.  Specifically, Page has failed to exhaust his administrative remedies as to any named defendant and has failed to identify the unknown Quartermaster Supervisor.  Therefore, it is not necessary to address

---

[3] According to the MDOC Offender Tracking Information System, Page was released on parole on May 9, 2023, and now resides in Louisville, Kentucky.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=231855 (last visited November 28, 2023).

2

whether he has stated valid claims against them.[4]  All defendants should be

DISMISSED WITHOUT PREJUDICE, and the case should be dismissed.

II.     Background

A.     Allegations

Page alleges that his health issues began in 2003, when he was seen by a

nurse about the large callouses that had formed on the heels of both of his feet.

(ECF No. 1, PageID.8).  Page, a diabetic, was only treated by having his callouses

shaved down and for years his request to see a podiatrist was ignored.  (*Id.*).  He

was transferred a number of times to different facilities before finally arriving at

MRF on November 4, 2021.  (*Id.*).  There, he provided the Quartermaster

Supervisor with a copy of his medical accommodation requiring wide 10.5 sized

shoes.  (*Id.*).  Page was instead given regular size 10 shoes and was forced to wear

these shoes until he wrote a grievance about the issue.  (*Id.*).  That grievance was

rejected as untimely.  Page says that the rejection was improper because he was

grieving an ongoing issue.  (*Id.*).

Page continually asked to see a doctor and a podiatrist, but was instead only

seen by nurses who recommended that he be sent to urgent care due to the open

callouses on each foot, his partially dislocated big toes, and his diabetic status.

---

[4] "All [courts] agree that no unexhausted claim may be considered."  *Jones v. Bock*, 549 U.S. 199, 219-220 (2007).  Thus, as none of Page's claims are exhausted, the Court need not reach their merits.

3

(*Id.*).  His proper shoes finally arrived three months later, but by that time, Page could hardly walk, had developed numbness in both feet, and feared infection and other complications related to diabetes.  (*Id.*).

Later, while in segregation, Page requested nursing care on multiple occasions, but his appointments were canceled at least three times.  (*Id.*, PageID.8-9).  MRF healthcare stated that his appointments were canceled because the officers in charge of segregation custody refused to bring him to his appointments.  (*Id.*, PageID.9).  Page attempted to grieve the issue, but before the first step of his grievance was resolved, he was transferred to the Thumb Correctional Facility.  (*Id.*).  There, he was seen by a doctor two days after his arrival.  (*Id.*).  He also had x-rays taken, which showed that the cracks in his calluses were almost bone-deep and that his toe was partially dislocated and deformed.  (*Id.*).

As noted above, Page has since been released from custody and resides in Kentucky.  He alleges that he is now in need of major surgery on both feet, is wheelchair-bound, and that he suffers "horrible pain from [his] injuries that should have been addressed 19 years ago."  (*Id.*, PageID.10).

B.     Grievances

Defendants have attached Page's Step III grievance report to their motions, which shows that Page has not exhausted a single grievance—whether denied or rejected—through Step III of the grievance process.  (ECF Nos. 15-1, 19-3).

4

However, Page has attached three grievances to his complaint that he alleges he was unable to properly exhaust through no fault of his own.

*MRF-22-03-612-3h* (MRF-3h)

On March 4, 2022, Page grieved that he had been denied specific medical accommodations since his arrival to MRF on November 4, 2021. (ECF No. 1, PageID.25). He complained that he provided his medical accommodation form to the Quartermaster Supervisor but was denied the proper shoes, given shoes that did not fit, and told to "take them or nothing." (*Id.*). The grievance was resolved on March 24, 2022, as Page's proper shoes were had been ordered and given to Page on March 21, 2022. (*Id.*).

*MRF-22-03-613-28e* (MRF-28e)

On March 16, 2022, Page filed a grievance involving a March 5, 2022 appointment with a nurse. (*Id.*, PageID.27). He stated that the examining nurse said he needed to see a doctor, but that he had been unable to see a doctor for twelve years. (*Id.*). He also noted his deep calluses, partially dislocated right toe, and diabetes. (*Id.*). The grievance was rejected as untimely at Step I. (*Id.*, PageID.28). No appeal of that determination was attached to Page's complaint, and the Step III grievance report has no record of the grievance reaching Step III.

*MRF-22-04-789-12z1* (MRF-12z1)

Lastly, on April 6, 2022, Page filed a grievance stating that needed to be

seen by a doctor for the previously mentioned ailments, but that his requests continued to be denied. (*Id.*, PageID.29). The Step I grievance response indicated that Page was called out to health care twice on April 8, 2022, but was not brought from segregation to his appointment. Thereafter, Page was seen on April 9, 21, 23, and 26, by nursing staff and a medical provider appointment was scheduled. On April 29, 2022, Page was called out for his medical provider appointment, but was not brought out from segregation. That appointment was rescheduled, and health care staff were informed to notify supervision if Page was not brought out to that appointment. (*Id.*, PageID.30). The grievance was considered "partially resolved." (*Id.*). Page did not appeal the grievance to Steps II or III of the grievance process.

### III.    Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Page is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV.   Analysis

A.   Exhaustion of Administrative Remedies

1.   Standard

7

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so."  *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to

exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The Michigan Department of Corrections (MDOC) has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates,

9

times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ S (underlining omitted).

2.      Exhaustion and Availability of Remedies

a.      Nenrod and Steece

Two of the unexhausted grievances are arguably relevant to the MDOC defendants.  MRF-3h involved Page being denied his medical shoe accommodation upon arrival at MRF and through the date of the grievance.  This grievance specifically mentions the "Quartermaster Supervisor's" denial of Page's accommodation, but does not mention Nenrod or Steece.  The fact that the grievance was considered "resolved" by MDOC after Page was provided with proper footwear means that it could be considered exhausted without being appealed.  *See Manning v. Dolce*, No. CIV.A09-13840, 2010 WL 3515718, at *3 (E.D. Mich. July 12, 2010), *report and recommendation adopted,* No. 09-CV-13840-DT, 2010 WL 3515715 (E.D. Mich. Sept. 8, 2010) ("[MDOC] Policy does not contemplate an appeal to Step II unless the grievant 'is **dissatisfied** with the grievance response received at Step I or if he did not receive a timely response.' " (quoting PD 03.02.130, ¶ BB (emphasis added in *Manning*))).  Nonetheless, the failure to name Nenrod or Steece in the grievance is fatal to exhaustion of claims against them.

As noted above, grievances must contain the dates, times, places, and *names*

10

of all those involved.  *Reed-Bey v. Pramstaller*, 603 F.3d at 324.

> Although a failure to name a specific individual in a grievance may not always render exhaustion inadequate, especially where the grievance is addressed on the merits and not rejected as unduly vague, *a plaintiff fails to exhaust administrative remedies as to a particular defendant not identified in the grievance if the plaintiff specifically identifies other defendants by name and nothing in the grievance would put the unnamed defendants on notice*.

*Kensu v. Rapelje*, No. 12-11877, 2013 WL 1774637, at *4 (E.D. Mich. Apr. 25, 2013) (internal citations omitted) (emphasis added).  *See also Vandiver v. Vasbinder*, No. 08-10508, 2012 WL 4355536, at *1 (E.D. Mich. 2012); *Walls v. O'Connor*, No. 12-11874, 2013 WL 572449, at *6 (E.D. Mich. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 571752 (E.D. Mich. Feb. 13, 2013).  Here, Nenrod and Steece were not named in or otherwise put on notice by this grievance.  In some circumstances where the MDOC does not reject a grievance for failing to name the culprits, this argument can be deemed waived.  However, in this case the grievance *did* identify a culprit (the Quartermaster Supervisor), meaning the MDOC had no reason to reject the grievance for this reason.  Therefore, Page's claims against Nenrod and Steece are unexhausted.

MRF-12z1 involved MDOC's failure to call Page out from segregation to health care for scheduled appointments.  It does not state the dates of these appointments, nor does it indicate who was responsible for the lack of a call out.  However, it states that Page talked to "health care staff" in the presence of two

officers, "Lyons and Miles," who are not named in the complaint.  (ECF No. 1, PageID.29).  Instead of rejecting the grievance, the MDOC was able to reschedule Page's medical provider appointment and instruct health care on how to ensure that he would be called out for it.  (*Id.*, PageID.30).  The grievance was considered "partially resolved."  (*Id.*).

Page correctly argues that the partially resolved grievance creates an issue of fact as to whether he needed to appeal the grievance to exhaust his remedies. *McClaine-Bey v. Bury*, No. 2:20-CV-162, 2022 WL 508839, at *5 (W.D. Mich. Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 504618 (W.D. Mich. Feb. 18, 2022) ("Construing the facts in the light most favorable to [the plaintiff], the undersigned concludes that there is a genuine issue of material fact concerning the resolution of [the grievance] at Step I of the grievance process, thus precluding summary judgment as to this claim.").  However, Page again failed to name Nenrod or Steece in the grievance, precluding them from having notice of the claim.  While, as noted above, this issue could be deemed waived by the MDOC, Page did name other officers in the grievance.  Thus, the grievance being decided on the merits does not mean that MDOC has waived the defense.

In the end, because Nenrod and Steece were not named or otherwise put on notice in any of Page's relevant grievances, the claims against them are unexhausted and should be dismissed.

12

b.    Wellpath Defendants

The relevant grievance for Page's allegations against the Wellpath

defendants is MRF-28e.  Page said that on March 5, 2022, he sent a medical kite

about his condition and was seen by a nurse.  The unnamed nurse agreed that Page

needed to see a doctor, but he was not ultimately able to see one.  He filed this

grievance on March 16, 2022.  (*Id.*, PageID.27).

Under MDOC PD 03.02.130 ¶Q, a grievant has two days to attempt to

resolve his grievable issue with staff, and then five days after attempting to resolve

the issue to file a Step I grievance.  (ECF No. 19-2, PageID.200).  Here, Page

indicated that his issue took place on March 5, that he also attempted to resolve it

on March 5, and that the grievance was filed on March 16.  As the date of filing

was beyond five days from the attempt to resolve the issue, the MDOC rejected it

as untimely.  (ECF No. 1, PageID.28).

In the complaint, Page argues that the "grievance was rejected as untimely

because [he] explained how long [he] had been dealing with the issue." (*Id.*,

PageID.8).  However, the only plausible explanation is that the rejection was due

to the time between the incident (and its attempted resolution) and the filing of the

grievance.  Furthermore, Page did not appeal the determination.

Grievances properly rejected as untimely do not exhaust an inmate's

administrative remedies.  *Woodford*, 548 U.S. at 95.  Therefore, Page's claims

13

against the Wellpath defendants are unexhausted.

Page also failed to name Farris or Martino in this or any other grievance.  As explained above, this means they were never put on notice of Page's allegations, and cannot now be haled into federal court.  *Reed-Bey v. Pramstaller*, 603 F.3d at 324.  This is a second, independent reason that his claims against them are unexhausted and that those claims should be dismissed.

c.    Unknown Quartermaster Supervisor

Page's only remaining claim is against the unknown Quartermaster Supervisor.  This claim was grieved in MRF-3h, and the claim was exhausted when that grievance was resolved.  However, this individual has never been identified or served with the complaint.  Under Federal Rule of Civil Procedure 4(m), Page had ninety days from the filing of the complaint to serve the defendants.  He has not done so; therefore, the unknown Quartermaster Supervisor should be dismissed as well.  *See Porter v. Nationstar Mortg. Servs.*, No. 215CV02578SHMEGB, 2017 WL 2493150, at *2 (W.D. Tenn. June 9, 2017).  Further, dismissal of unknown defendants without prejudice is proper where no claims remain against named defendants.  *See Ruff v. Corr. Med. Servs.*, No. 07-15443-BC, 2009 WL 1384158, at *1 (E.D. Mich. May 13, 2009) (citing *Haddad v. Fromson,* 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001); *Adams v. Hyman Lippitt, P.C.*, No. 05–72171, 2007 WL 2571955, at *1 (E.D. Mich. Sept. 5, 2007)).

14

V.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' dispositive motions, (ECF Nos. 15, 19), be GRANTED.  Specifically, Page has failed to exhaust his administrative remedies as to any named defendant and has failed to identify or serve the unnamed defendant within ninety days of filing the complaint.  Therefore, all defendants should be DISMISSED WITHOUT PREJUDICE, and the case should be dismissed.

Dated: November 28, 2023              s/Kimberly G. Altman
Detroit, Michigan                     KIMBERLY G. ALTMAN
                                      United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

15

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 28, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager